**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZHENGYU HE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>    v.<br><br>CHINA ZENIX AUTO INTERNATIONAL LIMITED, JIANHUI LAI, and MARTIN CHEUNG,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Zhengyu He ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by

and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding China Zenix Auto International Limited ("China Zenix" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded China Zenix securities from October 2, 2015 through June 14, 2018, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein and subsequent damage occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased China Zenix securities during the Class Period and was economically damaged thereby.

7.      Defendant China Zenix designs, manufactures, and sells commercial vehicle wheels to aftermarket and original equipment manufacturers in the People's Republic of China and internationally. It offers: tubed steel wheels; tubeless steel wheels; off-road steel wheels; aluminum wheels; and wheel components, such as wheel discs. The Company was founded in 2006 and is based in Zhangzhou, China. It went public on the U.S. stock market on October 28, 2015 by reverse merger. China Zenix's American Depository Shares ("ADSs") traded on The New York Stock Exchange ("NYSE") under the ticker symbol "ZX" until June 14, 2018. The

Company's securities currently trade on the OTCQX under the ticker symbol "ZXAIY."

8.  Defendant Jianhui Lai ("Lai") has been the Chief Executive Officer ("CEO") and Chairman of the Board of Directors of the Company throughout the entire Class Period.

9.  Defendant Martin Cheung ("Cheung") has been the Chief Financial Officer ("CFO") of the Company throughout the entire Class Period.

10.  Defendants Lai and Cheung are collectively referred to herein as the "Individual Defendants."

11.  Each of the Individual Defendants:

    a.  directly participated in the management of the Company;

    b.  was directly involved in the day-to-day operations of the Company at the highest levels;

    c.  was privy to confidential proprietary information concerning the Company and its business and operations;

    d.  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    e.  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f.      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g.      approved or ratified these statements in violation of the federal securities laws.

12.     China Zenix is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to China Zenix under *respondeat superior* and agency principles.

14.     Defendants China Zenix and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15.     On August 18, 2015, China Zenix received a Continued Listing Standards Notice from the NYSE, notifying the Company that it had not satisfied the NYSE's Continued Listing Requirements. The Continued Listing Standard Notice, stated in relevant part:

ZHANGZHOU, China, August 18, 2015 — China Zenix Auto International Limited (NYSE: ZX) ("Zenix Auto" or "the Company"), the largest commercial vehicle wheel manufacturer in China in the aftermarket and OEM market by sales volume, today announced that it has been notified by the New York Stock Exchange (the "NYSE") that the Company has not met the NYSE's price criteria for continued listing standard because, as of July 31, 2015, the average closing price of the Company's American Depositary Shares, or ADSs, was less than $1.00 per ADS over a consecutive 30-trading-day period.

Under NYSE rules, the Company has six months following receipt of the notification to regain compliance with the minimum share price requirement. The Company can regain compliance at any time during the six-month cure period if the Company's ADSs have an average closing ADS price of at least $1.00 over a consecutive 30-trading-day period ending on the last trading day of that month.

The Company expects to notify the NYSE of its intention to cure this deficiency within the prescribed timeframe. The Company's ADSs will continue to be listed and traded on the NYSE, subject to compliance with other NYSE continued listing standards and oversight by the NYSE. The NYSE notification does not affect the Company's business operations or its Securities and Exchange Commission reporting requirements.

16.    On May 27, 2016, China Zenix was again notified by the NYSE that the Company had not met the NYSE's Continued Listing Requirements, with the Continued Listing Standard Notice, stating in relevant part:

May 27 2016 (India Automobile News) -- May 27 – China Zenix Auto International Limited (NYSE: ZX) ("Zenix Auto" or "the Company"), the largest commercial vehicle wheel manufacturer in China in the aftermarket and OEM market by sales volume, today announced that it has been notified by the New York Stock Exchange (the "NYSE") that the Company has not met the NYSE's price criteria for continued listing standard because, as of May 25, 2016, the average closing price of the Company's American Depositary Shares, or ADSs, was less than $1.00 per ADS over a consecutive 30-trading-day period.

Under NYSE rules, the Company has six months following receipt of the notification to regain compliance with the minimum share price requirement. The Company can regain compliance at any time during the six-month cure period if the Company's ADSs have an average closing ADS price of at least $1.00 over a consecutive 30-trading-day period ending on the last trading day of that month.

The Company expects to notify the NYSE of its intention to cure this deficiency within the prescribed timeframe. The Company's ADSs will continue to be listed and traded on the NYSE, subject to compliance with other NYSE continued listing standards and oversight by the NYSE. The NYSE notification does not affect the Company's business operations or its Securities and Exchange Commission reporting requirements.

## Materially False and Misleading Statements Issued During the Class Period

17.    The Class Period begins on October 2, 2015 when China Zenix

announced in a press release that it regained compliance with the NYSE continued

listing requirements, stating in relevant part:

ZHANGZHOU, China, October 2, 2015 — China Zenix Auto International Limited (NYSE: ZX) ("Zenix Auto" or "the Company"), the largest commercial vehicle wheel manufacturer in China in the aftermarket and OEM market by sales volume, today announced that it was notified on October 1, 2015 by the New York Stock Exchange (the "NYSE") that the Company had satisfied the NYSE's continuing listing standard as both the closing share price of the Company's common stock and its average closing share price over the preceding 30 consecutive trading days ended September 30, 2015, were in compliance with the $1.00 minimum threshold required by the NYSE.

The Company is now in compliance with all NYSE continued listing requirements and the ".BC" indicator following our stock symbol has been removed by NYSE.

18.    On April 28, 2016, China Zenix filed a Form 20-F with the SEC for the quarter ending September 30, 2015 (the "2015 20-F"). The 2015 20-F was signed by Defendants Lau and Cheung and contained Sarbanes-Oxley Act of 2002 ("SOX") certifications signed by Defendants Lau and Cheung attesting to the accuracy of the 2015 20-F and that all fraud was disclosed. The 2015 20-F stated that China Zenix had adequate internal controls and complied with SEC regulations, stating in pertinent part:

**Item 15.      Controls and Procedures**

**Disclosure Controls and Procedures**

As of December 31, 2015, our management performed, under the supervision and with the participation of our chief executive officer and chief financial officer, an evaluation of the effectiveness of our disclosure controls and procedures as defined and required under Rules 13a-15 and 15d-15 of the Exchange Act. Based upon that evaluation, ***they have concluded that our disclosure controls and procedures were effective in ensuring that the information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and regulations, and that the information required to be disclosed by us in the reports that we file or submit under the Exchange Act is accumulated and communicated to our management, including our chief executive officer and chief financial officer, to allow timely decisions regarding required disclosure***.

**Management's Annual Report on Internal Control Over Financial Reporting**

\*      \*      \*

Under the supervision and with the participation of our chief executive officer and chief financial officer, our management conducted an assessment of the effectiveness of our internal control over financial reporting as of December 31, 2015, using criteria established in the updated framework in the Internal Control — Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission in 1992 and updated in May 2013 issued by the Committee of Sponsoring Organizations of the Treadway Commission, or COSO. ***Based on this assessment, our management has concluded that our internal control over financial reporting was effective as of December 31, 2015.***

\*      \*      \*

**Changes in Internal Control Over Financial Reporting**

There were no changes in our internal control over financial reporting identified in connection with the evaluation required by Rule 13a-15 or 15d-15 of the Exchange Act that occurred during the period covered by this annual report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

19.    On September 2, 2016, China Zenix issued a press release announcing that it regained compliance with the NYSE continued listing requirements, stating in relevant part:

ZHANGZHOU, China, Sep 2, 2016 — China Zenix Auto International Limited (NYSE: ZX) ("Zenix Auto" or "the Company"), the largest commercial vehicle wheel manufacturer in China in the aftermarket and OEM market by sales volume, today announced that it was notified on Sep 1, 2016 by the New York Stock Exchange (the "NYSE") that the Company had satisfied the NYSE's continuing listing standard as both the closing share price of the Company's common stock and its average closing share price over the preceding 30

consecutive trading days ended Aug 31, 2016, were in compliance with the $1.00 minimum threshold required by the NYSE.

20.    On April 28, 2017, the Company filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended December 31, 2016 (the "2016 20-F"). The 2016 20-F was signed by Defendants Lai and Cheung. The 2016 20-F contained signed SOX certifications by Defendants Lai and Cheung attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

21.    The 2016 20-F discussed the Company's internal controls, stating in relevant part:

> Under the supervision and with the participation of our chief executive officer and chief financial officer, our management conducted an assessment of the effectiveness of our internal control over financial reporting as of December 31, 2016, using criteria established in the updated framework in the Internal Control — Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission in 1992 and updated in May 2013 issued by the Committee of Sponsoring Organizations of the Treadway Commission, or COSO. **Based on this assessment, our management has concluded that our internal control over financial reporting was effective as of December 31, 2016.**
>
> *      *      *
>
> **Changes in Internal Control Over Financial Reporting**
>
> There were no changes in our internal control over financial reporting identified in connection with the evaluation required by Rule 13a-15 or 15d-15 of the Exchange Act that occurred during the period covered by this annual report that have materially affected, or

are reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

22.    On April 27, 2018, the Company filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal year ended December 31, 2017 (the "2017 20-F"). The 2017 20-F was signed by Defendants Lai and Cheung. The 2017 20-F contained signed SOX certifications by Defendants Lai and Cheung attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.    The 2017 20-F discussed the Company's internal controls, stating in relevant part:

> Under the supervision and with the participation of our chief executive officer and chief financial officer, our management conducted an assessment of the effectiveness of our internal control over financial reporting as of December 31, 2017, using criteria established in the updated framework in the Internal Control — Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission in 1992 and updated in May 2013 issued by the Committee of Sponsoring Organizations of the Treadway Commission, or COSO. ***Based on this assessment, our management has concluded that our internal control over financial reporting was effective as of December 31, 2017.***

>                                *    *    *

> **Changes in Internal Control Over Financial Reporting**

> There were no changes in our internal control over financial

reporting identified in connection with the evaluation required by Rule 13a-15 or 15d-15 of the Exchange Act that occurred during the period covered by this annual report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

24.    The statements contained in ¶¶ 17-23 were materially false and/or misleading and/or failed to disclose that: (1) China Zenix's trading actions in connection with its compliance with the NYSE Continued Listed Requirements were contrary to public policy; (2) China Zenix had inadequate internal controls over financial reporting; and (3) as a result of the foregoing, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### **The Truth Emerges**

25.    On June 14, 2018, the NYSE suspended trading in China Zenix and commenced delisting proceedings and issued a press release stating in relevant part:

NEW YORK, June 14, 2018 – The New York Stock Exchange ("NYSE", the "Exchange") announced today that the staff of NYSE Regulation has determined to commence proceedings to delist the American depositary shares, each representing four ordinary shares (the "ADSs") of China Zenix Auto International Limited (the "Company") -- ticker symbol ZX -- from the NYSE. Trading in the Company's ADSs will be suspended immediately.

***The determination to delist the Company was based on an investigation conducted by NYSE Regulation that brought to light the existence of events that made further dealings or listing of the securities on the Exchange contrary to the public interest and not in***

12

*keeping with sound public policy, pursuant to Section 802.01D of the Listed Company Manual*.

The Company has a right to a review of this determination by a Committee of the Board of Directors of the Exchange. The NYSE will apply to the Securities and Exchange Commission to delist the ADSs upon completion of all applicable procedures, including any appeal by the Company of the NYSE Regulation staff's decision.

(Emphasis added.)

26.    The next day, China Zenix announced its intent to appeal the NYSE

delisting decision, stating, in relevant part:

ZHANGZHOU, China, June 15, 2018 – China Zenix Auto International Limited (NYSE: ZX) ("the Company"), the largest commercial vehicle wheel manufacturer in China in both the aftermarket and OEM market by sales volume, today announced it has received a delisting notice from the NYSE. The delisting became effective on June 14, 2018.

*The delisting decision was made by the NYSE staff in relation to a review of the trading of the Company's stock during certain periods in 2015 and 2016 when its stock price fell below the NYSE minimum price requirement*. The Company was disappointed by the decision of the NYSE staff and disagrees with their factual findings. The Company has decided to appeal against the NYSE delisting decision. In the meantime, the Company will apply for its common stock to be quoted and traded on the OTCQX.

The Company remains committed to protecting shareholder value despite the delisting. The Company has a strong cash position, with bank balances and cash of RMB783.7 million (US$124.9 million) and fixed bank deposits with a maturity period over three months of RMB290.0 million (US$46.2 million) as of March 31, 2018. The board of directors will explore options of deploying some of the available cash through share buybacks and cash dividends.

The Company will continue filing its periodic reports with the

Securities Exchange Commission. The Company plans to report its financial results for the second quarter on or before August 17, 2018.

(Emphasis added.)

27. On this news, shares of China Zenix fell $0.11 per share or over 13% from its previous closing price to close at $0.70 per share on June 14, 2018, damaging investors.

28. As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's securities and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired publicly traded China Zenix securities during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of China Zenix, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

30. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, China Zenix's securities were actively traded on the NYSE. While the exact number of Class members is unknown

to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

31.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of China Zenix;

c.    whether Defendants caused China Zenix to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the prices of China Zenix securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

35.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      China Zenix securities are traded in an efficient market;

     d.    the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

     e.    the Company's securities traded on the NYSE;

     f.    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

     g.    Plaintiff and members of the Class purchased, acquired and/or sold China Zenix securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

36. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

37. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CAUSE OF ACTION

### Violation of Section 10(b) of the Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     This cause of action is asserted against all Defendants.

40.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell China Zenix's at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

41.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of China Zenix as specified herein.

42.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors

18

of China Zenix's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about China Zenix and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers China Zenix securities during the Class Period.

43.    Each of the Defendants' primary liability, and controlling person liability, arises from the following: (a) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's plans, projections and/or reports; (c) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's, operations, and (d) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

44.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing China Zenix's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

45.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for China Zenix's securities was artificially inflated during the Class Period.

46.    In ignorance of the fact that market prices of China Zenix's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class

Period, Plaintiff and the other members of the Class acquired China Zenix's securities during the Class Period at artificially high prices and were damaged thereby.

47.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding China Zenix's financial results and condition, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired China Zenix securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

48.    By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

49.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

50.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of China Zenix securities during the Class Period.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.    During the Class Period, the Individual Defendants participated in the operation and management of China Zenix, and conducted and participated, directly and indirectly, in the conduct of China Zenix's business affairs. Because of their senior positions, they knew the adverse non-public information about China Zenix's misstatement of revenue and profit and false financial statements.

53.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to China Zenix's financial condition and results of operations, and to correct promptly any public statements issued by China Zenix which had become materially false or misleading.

54.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which China Zenix disseminated in the marketplace during the Class Period concerning China Zenix's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and

authority to cause China Zenix to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of China Zenix within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of China Zenix securities.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by China Zenix.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b. Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Awarding such other and further relief as the Court may deem just and

proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 31, 2018                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff