**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Phillip Kim (admitted *pro hac vice*)
Joshua Baker (admitted *pro hac vice*)
101 Greenwood Ave., Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
         jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ZHENGYU HE, Individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>CHINA ZENIX AUTO INTERNATIONAL LIMITED, JIANHUI LAI, and MARTIN CHEUNG,<br><br>　　　Defendants. | Case No. 2:18-cv-15530-JLL-JAD<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

1

Lead Plaintiffs ITENT EDV Dienstleistungs GmbH and Ing. Richard Deutner Softwaeentwicklung & Beratung ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants (defined below), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters, based upon, among other things, the investigation conducted by and through their attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding China Zenix Auto International Limited ("China Zenix" or the "Company"), interviews with relevant third-party witnesses, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.     This is a federal securities class action on behalf of a class consisting of persons or entities, other than Defendants and their affiliates, who purchased publicly traded China Zenix securities from October 2, 2015 through June 14, 2018, inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities

Exchange Act of 1934 (the "Exchange Act").

2.      China Zenix is controlled by its majority shareholder, who is also the Company's founder, CEO, and Chairman. Defendant Jianhui Lai founded China Zenix, owned approximately 70% of the Company's ordinary shares during the Class Period, and served as the Company's CEO and Chairman.

3.      Jianhui Lai's influence extends beyond his personal contributions – multiple members of his immediate family also hold important positions at China Zenix and its operating subsidiaries.

4.      In August 2015, the Company announced that it had received a notice from the NYSE that the Company faced being delisted because it had failed to meet the NYSE's minimum price threshold of $1.00. A few months later, the Company announced that it had successfully revived its share price and avoided delisting.

5.      In May 2016, the Company once again announced that the NYSE had sent the Company a warning notice on the same basis. Once again, a few months later the Company announced that its share price had sufficiently recovered and it had returned to the NYSE's good graces.

6.      However, unbeknownst to investors, the reason the Company was able to increase its share price above the threshold was actually due to improper trading by Company employees and others. In April 2018, the Company quietly revealed in its annual report that over nine months earlier, the NYSE had sought information

from the Company relating to the Company's knowledge of improper trading by its employees and others in connection with the 2015 and 2016 periods in which the Company faced delisting.

7.     Upon information and belief, Defendant Jianhui Lai was the only employee of the Company with the ability and motivation to manipulate China Zenix's share price to stave off – for a time – delisting by the NYSE.

8.     Being listed on the NYSE was important to China Zenix (and Jianhui Lai) because it gave them a readily-available source of financing, and the prestige of being a publicly-listed company on a U.S. exchange was beneficial to the Company's business and reputation.

9.     On June 14, 2018, the NYSE delisted the Company's shares due to conduct "contrary to the public interest and not in keeping with sound public policy," in connection with trading during the periods in 2015 and 2016 when the Company's share price had fallen below NYSE standards. The NYSE immediately suspended trading in China Zenix's shares.

10.    When China Zenix's shares resumed trading on the OTC market, its share price plummeted over 42%, harming investors.

11.    China Zenix attempted to appeal the NYSE's delisting decision, but in December 2018 the Company's appeal was rejected and the decision affirmed by a Committee of the Board of Directors of the NYSE.

4

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under and pursuant to Sections 10(b), 20(a), 9(a) and 9(f) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

13.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

14.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein and subsequent damage occurred in this District.

15.    In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

16.    Lead Plaintiff ITENT EDV Dienstleistungs GmbH purchased China Zenix securities at artificially inflated prices during the Class Period as set forth in its shareholder certification and incorporated by reference herein (Dkt. No. 8-5), and has been damaged thereby.

17.     Lead Plaintiff Ing. Richard Deutner Softwaeentwicklung & Beratung purchased China Zenix securities at artificially inflated prices during the Class Period as set forth in its shareholder certification and incorporated by reference herein (Dkt. No. 8-6), and has been damaged thereby.

18.     Defendant China Zenix designs, manufactures, and sells commercial vehicle wheels to aftermarket and original equipment manufacturers in the People's Republic of China ("PRC") and internationally. The Company was founded in 2006 and is based in Zhangzhou, China. It was incorporated under the laws of the British Virgin Islands ("BVI") on July 11, 2008. According to the Company's website, it is the largest commercial vehicle wheel manufacturer in China in both the aftermarket and original equipment manufacturer ("OEM") market in sales volume.

19.     China Zenix completed an initial public offering of its American Depository Shares ("ADSs") on May 17, 2011. The Company's ADSs each represent four of the Company's ordinary shares, and traded on The New York Stock Exchange ("NYSE") under the ticker symbol "ZX" from May 11, 2011 until June 14, 2018. The Company's securities currently trade on the OTCQX under the ticker symbol "ZXAIY."

20.     Defendant Jianhui Lai is the founder of the Company. He served as the Company's CEO and Chairman of the Board of Directors throughout the entire Class Period.

21.     Defendant Martin Cheung has been the Chief Financial Officer ("CFO") of the Company since March 2014.

22.     Defendants Jianhui Lai and Martin Cheung are collectively referred to herein as the "Individual Defendants."

23.     Each of the Individual Defendants:

   a.     directly participated in the management of the Company;

   b.     was directly involved in the day-to-day operations of the Company at the highest levels;

   c.     was privy to confidential proprietary information concerning the Company and its business and operations;

   d.     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   e.     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

   f.     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

   g.     approved or ratified these statements in violation of the federal securities laws.

24.     China Zenix is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

25.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to China Zenix under *respondeat superior* and agency principles.

26.     Defendants China Zenix and the Individual Defendants are collectively referred to herein as "Defendants."

## ALLEGATIONS OF SECURITIES FRAUD

### Defendant Jianhui Lai Controls China Zenix

27.     China Zenix's operations are conducted through its Zhangzhou-based subsidiary, Zhengxing Wheel Group Co. Ltd. ("Zhengxing Wheel"). Zhengxing Wheel was incorporated in the PRC in 2003, and was 80-90% owned by Defendant Jianhui Lai. China Wheel Limited, a Hong Kong company ("China Wheel"), serves as an intermediate holding company. China Zenix owns China Wheel, which owns Zhengxing Wheel, which owns a number of subsidiaries in the PRC.

28.     Defendant Jianhui Lai, China Zenix's CEO and Chairman, beneficially owns approximately 70% of the Company's ordinary shares through his 100% ownership of Newrace Limited, a BVI-based holding company. He is described in

the Company's annual reports filed with the SEC as China Zenix's "ultimate controlling party" and controlling shareholder, with "substantial influence over our business."

29.     Not only does Jianhui Lai control the Company and 70% of its shares; his family is extensively involved with the Company's business as well. Jianhui Lai's wife, Lizhu Lai, and brother, Jianping Lai, both serve as directors on the board of Zhengxing Wheel. Jianping Lai also serves as the supervisor of a Zhengxing Wheel subsidiary and the marketing director of Zhengxing Wheel. Another of Jianhui Lai's brothers, Yahui Lai, serves as the supervisor of Zhengxing Wheel and two of its subsidiaries. Another of Jianhui Lai's brothers, Dexiong Lai, serves as the supervisor of another Zhengxing Wheel subsidiary.

30.     According to Former Employee 1 ("FE 1"), who served as assistant to the finance center director for Zhengxing Wheel from July 2014 through February 2017, Zhengxing Wheel is led and managed by Jianhui Lai. FE 1 also reported that Jianhui Lai has many relatives who work for the Company, and that the Company "operates much like a family business."

31.     Former Employee 2 ("FE 2"), who served as factory head for Zhengxing Wheel from July 2007 to October 2018, corroborated that the Company is a "family business," and that many of Jianhui Lai's relatives work at the Company.

32.     According to the Company's annual reports filed with the SEC for 2015, 2016 and 2017, Defendant Jianhui Lai beneficially held 70% of the Company's total outstanding ordinary shares, through his 100% ownership of Newrace Limited. According to each of the Company's 2015, 2016, and 2017 annual reports, no other director or executive officer of China Zenix held more than 1% of the Company's total outstanding ordinary shares.

33.     FE 2 reported that China Zenix did not offer the opportunity for employees to own shares in the Company. In fact, FE 2 reported that some employees resigned because they were previously hoping for potential access to dividends when China Zenix announced that it planned to go public in 2011, and were disappointed that employees would not be offered any shares in the Company.

34.     Thus, Defendant Jianhui Lai either directly participated in the scheme to manipulate China Zenix's share price in order to meet the NYSE's minimum price threshold, or knew about it through the participation of his immediate family members and/or entities under his or their control. No other employee of the Company had the ability, nor the motivation, to manipulate the price of China Zenix's ADSs in order to meet the NYSE's minimum price threshold.

### Defendants Made False and Misleading Statements of Material Fact During the Class Period

35.     Pursuant to the NYSE Listed Company Manual 802.01C:

10

A company will be considered to be below compliance standards if the average closing price of a security as reported on the consolidated tape is less than $1.00 over a consecutive 30 trading-day period. Once notified, the company must bring its share price and average share price back above $1.00 by six months following receipt of the notification.

*      *      *

In the event that at the expiration of the six-month cure period, both a $1.00 closing share price on the last trading day of the cure period and a $1.00 average closing share price over the 30 trading-day period ending on the last trading day of the cure period are not attained, the Exchange will commence suspension and delisting procedures.

36.     On August 18, 2015, China Zenix issued a press release revealing that the Company had received a Continued Listing Standards Notice from the NYSE. The Company stated that in the Notice, the NYSE notified the Company that it was in violation of the NYSE's continued listing requirements, specifically the NYSE's minimum share price requirement.

37.     China Zenix never disclosed when it had actually received the Continued Listing Standards Notice. The NYSE Listed Company Manual 802.01C provides that a non-U.S. company must issue a press release within 30 days after receipt of the NYSE warning.

38.     The press release stated, in relevant part:

China Zenix Auto International Limited (NYSE: ZX) ("Zenix Auto" or "the Company"), the largest commercial vehicle wheel manufacturer in China in the aftermarket and OEM market by sales volume, today announced that it has been notified by the New York Stock Exchange (the "NYSE") that the Company has not met the NYSE's price criteria for continued listing standard because, as of July 31, 2015, the average

closing price of the Company's American Depositary Shares, or ADSs, was less than $1.00 per ADS over a consecutive 30-trading-day period.

Under NYSE rules, the Company has six months following receipt of the notification to regain compliance with the minimum share price requirement. The Company can regain compliance at any time during the six-month cure period if the Company's ADSs have an average closing ADS price of at least $1.00 over a consecutive 30-trading-day period ending on the last trading day of that month.

39.     On October 2, 2015, China Zenix announced in a press release that it regained compliance with the NYSE continued listing requirements, stating in relevant part:

China Zenix Auto International Limited (NYSE: ZX) ("Zenix Auto" or "the Company"), the largest commercial vehicle wheel manufacturer in China in the aftermarket and OEM market by sales volume, today announced that it was notified on October 1, 2015 by the New York Stock Exchange (the "NYSE") that *the Company had satisfied the NYSE's continuing listing standard as both the closing share price of the Company's common stock and its average closing share price over the preceding 30 consecutive trading days ended September 30, 2015, were in compliance with the $1.00 minimum threshold required by the NYSE.*

*The Company is now in compliance with all NYSE continued listing requirements* and the ".BC" indicator following our stock symbol has been removed by NYSE.

(Emphasis added).

40.     The October 2, 2015 statements were misleading because they failed to disclose that (1) the Company knew that Company employees and others were trading in China Zenix ADSs in an improper manner following the Company's receipt of the Continued Listing Standards Notice from the NYSE in August 2015;

12

(2) this improper trading was the true reason by which Company was able to comply with the $1.00 minimum threshold to satisfy the NYSE's continued listing standard; and (3) the Company faced the material risk of being delisted by the NYSE due to the improper trading and its knowledge thereof.

41.     On April 28, 2016, China Zenix filed an annual report for the fiscal year ending December 31, 2015 on Form 20-F with the SEC (the "2015 20-F"). The 2015 20-F was signed by Defendant Martin Cheung.

42.     The 2015 20-F also contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by Defendants Jianhui Lai and Martin Cheung, attesting to the accuracy of the 2015 20-F. Jianhui Lai and Martin Cheung each certified that the 2015 20-F "does not contain any untrue [or misleading] statement of a material fact." Jianhui Lai and Martin Cheung also each certified that they disclosed to the Company's auditor and audit committee "any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting."

43.     These statements were false and misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that (1) the Company knew that Company employees and others were trading in China

Zenix ADSs in an improper manner following the Company's receipt of the Continued Listing Standards Notice from the NYSE in August 2015; (2) this improper trading was the true reason by which Company was able to comply with the $1.00 minimum threshold to satisfy the NYSE's continued listing standard; (3) the Company faced the material risk of being delisted by the NYSE due to the improper trading and its knowledge thereof; and (4) as a result of the foregoing, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

44.    On May 27, 2016, China Zenix issued a press release stating that the Company had again received a Continued Listing Standards Notice from the NYSE. The Company stated that in the Notice, the NYSE notified the Company that it was in violation of the NYSE's continued listing requirements, specifically the NYSE's minimum share price requirement.

45.    The press release stated, in relevant part:

China Zenix Auto International Limited (NYSE: ZX) ("Zenix Auto" or "the Company"), the largest commercial vehicle wheel manufacturer in China in the aftermarket and OEM market by sales volume, today announced that it has been notified by the New York Stock Exchange (the "NYSE") that the Company has not met the NYSE's price criteria for continued listing standard because, as of May 25, 2016, the average closing price of the Company's American Depositary Shares, or ADSs, was less than $1.00 per ADS over a consecutive 30-trading-day period.

Under NYSE rules, the Company has six months following receipt of

14

the notification to regain compliance with the minimum share price requirement. The Company can regain compliance at any time during the six-month cure period if the Company's ADSs have an average closing ADS price of at least $1.00 over a consecutive 30-trading-day period ending on the last trading day of that month.

46.     On September 2, 2016, China Zenix issued a press release announcing that it regained compliance with the NYSE continued listing requirements, stating in relevant part:

China Zenix Auto International Limited (NYSE: ZX) ("Zenix Auto" or "the Company"), the largest commercial vehicle wheel manufacturer in China in the aftermarket and OEM market by sales volume, today announced that it was notified on Sep 1, 2016 by the New York Stock Exchange (the "NYSE") that *the Company had satisfied the NYSE's continuing listing standard as both the closing share price of the Company's common stock and its average closing share price over the preceding 30 consecutive trading days ended Aug 31, 2016, were in compliance with the $1.00 minimum threshold required by the NYSE.*

(Emphasis added).

47.     The September 2, 2016 statements were misleading because they failed to disclose that (1) the Company knew that Company employees and others were trading in China Zenix ADSs in an improper manner following the Company's receipt of the Continued Listing Standards Notice from the NYSE in May 2016; (2) this improper trading was the true reason by which Company was able to comply with the $1.00 minimum threshold to satisfy the NYSE's continued listing standard;

and (3) the Company faced the material risk of being delisted by the NYSE due to the improper trading and its knowledge thereof.

48.     On April 28, 2017, China Zenix filed an annual report for the fiscal year ending December 31, 2016 on Form 20-F with the SEC (the "2016 20-F"). The 2016 20-F was signed by Defendant Martin Cheung.

49.     The 2016 20-F also contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by Defendants Jianhui Lai and Martin Cheung, attesting to the accuracy of the 2016 20-F. Jianhui Lai and Martin Cheung each certified that the 2016 20-F "does not contain any untrue [or misleading] statement of a material fact." Jianhui Lai and Martin Cheung also each certified that they disclosed to the Company's auditor and audit committee "any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting."

50.     These statements were false and misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that (1) the Company knew that Company employees and others were trading in China Zenix ADSs in an improper manner following the Company's receipt of the Continued Listing Standards Notice from the NYSE in August 2015 and May 2016;

16

(2) this improper trading was the true reason by which Company was able to comply with the $1.00 minimum threshold to satisfy the NYSE's continued listing standard; (3) the Company faced the material risk of being delisted by the NYSE due to the improper trading and its knowledge thereof; and (4) as a result of the foregoing, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

51.    On April 27, 2018, China Zenix filed an annual report for the fiscal year ending December 31, 2017 on Form 20-F with the SEC (the "2017 20-F"). The 2017 20-F was signed by Defendant Martin Cheung.

52.    The 2017 20-F also contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by Defendants Jianhui Lai and Martin Cheung, attesting to the accuracy of the 2017 20-F. Jianhui Lai and Martin Cheung each certified that the 2017 20-F "does not contain any untrue [or misleading] statement of a material fact." Jianhui Lai and Martin Cheung also each certified that they disclosed to the Company's auditor and audit committee "any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting."

53.    These statements were false and misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the

Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that (1) the Company knew that Company employees and others were trading in China Zenix ADS in an improper manner following the Company's receipt of the Continued Listing Standards Notice from the NYSE in August 2015 and May 2016; (2) this improper trading was the true reason by which Company was able to comply with the $1.00 minimum threshold to satisfy the NYSE's continued listing standard; (3) the Company faced the material risk of being delisted by the NYSE due to the improper trading and its knowledge thereof; and (4) as a result of the foregoing, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

54.    The Company's 2017 20-F also disclosed for the first time that in July 2017, over nine months earlier, the NYSE had requested information regarding the Company's knowledge of trading by Company employees and others in the Company's ADSs during certain periods in 2015 and 2016. The 2017 20-F stated, in pertinent part:

> On July 12, 2017, the New York Stock Exchange ("NYSE") requested information form [sic] the Company *regarding its knowledge of the trading conducted by certain persons, including a number of Company employees, in the Company's stock during certain periods in 2015 and 2016.* The Company has provided documents and written responses to answer the NYSE's questions. *If the NYSE believes it is*

18

***warranted, it can remove the Company's stock from listing on its exchange.*** However, to date the NYSE has not threatened any action in associate with its inquiry.

(Emphasis added).

55.    This statement was misleading because the Company failed to disclose that the Company knew that Company employees and others were trading in China Zenix ADSs in an improper manner following the Company's receipt of the Continued Listing Standards Notices from the NYSE in August 2015 and May 2016; and (2) this improper trading was the true reason by which Company was able to comply with the $1.00 minimum threshold to satisfy the NYSE's continued listing standard in each instance; and (3) the NYSE's investigation into the Company's knowledge of the improper trading created a material risk to the Company of the NYSE delisting China Zenix's ADSs.

## The NYSE Delists China Zenix's ADSs

56.    On June 14, 2018, the NYSE issued a press release stating that it had suspended trading in China Zenix and commenced delisting proceedings. The press release stated in relevant part:

> The New York Stock Exchange ("NYSE", the "Exchange") announced today that the staff of NYSE Regulation has determined to commence proceedings to delist the American depositary shares, each representing four ordinary shares (the "ADSs") of China Zenix Auto International Limited (the "Company") -- ticker symbol ZX -- from the NYSE. Trading in the Company's ADSs will be suspended immediately.

*The determination to delist the Company was based on an investigation conducted by NYSE Regulation that brought to light the existence of events that made further dealings or listing of the securities on the Exchange contrary to the public interest and not in keeping with sound public policy, pursuant to Section 802.01D of the Listed Company Manual.*

The Company has a right to a review of this determination by a Committee of the Board of Directors of the Exchange. The NYSE will apply to the Securities and Exchange Commission to delist the ADSs upon completion of all applicable procedures, including any appeal by the Company of the NYSE Regulation staff's decision.

(Emphasis added).

57.    The delisting by the NYSE was the materialization of the risk that the Company's stock might be delisted or suffer other consequences as a result of its knowledge of improper trading engaged in by Company employees and others to raise the Company's stock price back above the NYSE minimum price requirements after it had fallen below the $1.00 minimum share price threshold.

58.    On this news, when China Zenix ADSs resumed trading on June 18, 2018 on the OTC exchange under a new stock ticker, "ZXAIY," the price of China Zenix ADSs fell $0.58 per ADS, or over 42% from its previous closing price to close at $0.80 per share on June 18, 2018, damaging investors.

59.    As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's ADSs, Plaintiffs and other Class members have suffered significant losses and damages.

## POST-CLASS PERIOD EVENTS

60.     On June 15, 2018, China Zenix issued a press release announcing its

intent to appeal the NYSE delisting decision, stating, in relevant part:

> China Zenix Auto International Limited (NYSE: ZX) ("the
> Company"), the largest commercial vehicle wheel manufacturer in
> China in both the aftermarket and OEM market by sales volume, today
> announced it has received a delisting notice from the NYSE. The
> delisting became effective on June 14, 2018.
>
> ***The delisting decision was made by the NYSE staff in relation to a
> review of the trading of the Company's stock during certain periods
> in 2015 and 2016 when its stock price fell below the NYSE minimum
> price requirement***. The Company was disappointed by the decision of
> the NYSE staff and disagrees with their factual findings. The Company
> has decided to appeal against the NYSE delisting decision. In the
> meantime, the Company will apply for its common stock to be quoted
> and traded on the OTCQX.

(Emphasis added.)

61.     Thus, the Company confirmed on June 15, 2018 that the NYSE's

decision to delist China Zenix resulted from the NYSE investigation the Company

had revealed in its 2017 20-F. That investigation, as noted in the Company's 2017

20-F related to "trading conducted by certain persons, including a number of

Company employees, in the Company's stock during certain periods in 2015 and

2016," and the Company's knowledge thereof. The June 15, 2018 release, read in

tandem with the 2017 20-F, also confirms that the trading in question by persons

including Company employees was related to the specific periods in 2015 and 2016

when the Company's stock price fell below the NYSE minimum price requirement.

21

62.     On December 11, 2018, the Company issued a press release revealing that a Committee of the Board of Directors of the NYSE had affirmed the NYSE's decision to delist China Zenix's ADSs.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

63.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired publicly traded China Zenix securities during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of China Zenix, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

64.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, China Zenix's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Class.

65.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

66.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

67.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of China Zenix;

c.     whether Defendants caused China Zenix to issue false and misleading financial statements during the Class Period;

d.     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.       whether the prices of China Zenix securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.       whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

68.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

69.     In addition, Plaintiffs and the Class are entitled to a presumption of reliance on Defendants' material misrepresentations pursuant to the fraud-on-the-market theory, because China Zenix's ADSs traded in an efficient market during the Class Period, in that:

a.       Throughout the Class Period, China Zenix's ADSs met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market. China Zenix ADSs were highly liquid during the Class Period;

b.    As a regulated issuer, China Zenix filed periodic public reports with the SEC and the NYSE;

c.    The Company regularly communicated with public investors by means of established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

d.    The market reacted promptly to public information disseminated by the Company, as new, Company-specific information was rapidly reflected in the price of China Zenix's ADSs;

e.    As a NYSE-traded stock, China Zenix had a designated market maker which made a market in China Zenix's ADSs; and

f.    The misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's securities.

70.    Based upon the foregoing, the market for China Zenix securities promptly digested current information regarding China Zenix from all publicly-available sources and reflected such information in the prices of the shares, and

Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

71.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CAUSE OF ACTION

### Violation of Section 10(b) of the Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

72.     Plaintiffs repeats and reallege each and every allegation contained above as if fully set forth herein.

73.     This cause of action is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

74.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (2) cause Plaintiffs and other members of the Class to purchase and/or sell China Zenix's at artificially inflated and distorted prices. In furtherance

of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

75.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of China Zenix as specified herein.

76.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of China Zenix's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about China Zenix and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers China Zenix securities during the Class Period.

77.    Each of the Defendants' primary liability, and controlling person liability, arises from the following: (a) Defendants were high-level executives,

directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's plans, projections and/or reports; (c) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's, operations, and (d) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

78.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing China Zenix's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged,

were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

79.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for China Zenix's securities was artificially inflated during the Class Period.

80.     In ignorance of the fact that market prices of China Zenix's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired China Zenix's securities during the Class Period at artificially high prices and were damaged thereby.

81.     At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding China Zenix's financial results and condition, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired China Zenix securities, or, if they had acquired such

securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

82.     By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

83.     As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

84.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of China Zenix securities during the Class Period.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

85.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

86.     During the Class Period, the Individual Defendants participated in the operation and management of China Zenix, and conducted and participated, directly and indirectly, in the conduct of China Zenix's business affairs. Because of their senior positions, they knew the adverse non-public information about China Zenix's misstatement of revenue and profit and false financial statements.

87.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to China Zenix's financial condition and results of operations, and to correct promptly any public statements issued by China Zenix which had become materially false or misleading.

88.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which China Zenix disseminated in the marketplace during the Class Period concerning China Zenix's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause China Zenix to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of China Zenix within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of China Zenix securities.

89.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by China Zenix.

## THIRD CAUSE OF ACTION

### Violation of Section 9(a) and 9(f) Of
### The Exchange Act Against the All Defendants

90.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

91.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (2) engage in a scheme to inflate the price of China Zenix ADSs; and (3) mislead and cause Plaintiffs and other members of the Class to purchase China Zenix's ADSs at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

92.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's ADSs in an effort to maintain artificially high market prices for China Zenix's ADSs in violation of Sections 9(a) and 9(f) of the Exchange Act. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

32

93.     By virtue of the foregoing, Defendants made statements which were at the time and in the light of the circumstances under which they were made, false or misleading with respect to the value of China Zenix ADSs, which Defendants knew or had reasonable ground to believe were so false or misleading.

94.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to make said false or misleading statements with respect to the value of China Zenix ADSs, which Defendants knew or had reasonable grounds to believe were so false or misleading.

95.     Each of the Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents of the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these

Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

96.     At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding China Zenix's true value and Defendants' price manipulation, which was not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired China Zenix ADSs, or, if they had acquired such ADS during the Class Period, they would not have done so at the artificially inflated prices that they paid.

97.     By virtue of the foregoing, Defendants violated Section 9(a) and 9(f) of the Exchange Act, 15 U.S.C. § 78i(a) and 78i(f).

98.     As a direct and proximate result of Defendants' conduct as described herein, Plaintiffs have suffered significant damages and are entitled to such damages from Defendants, jointly and severally.

99.     This action was filed within one year of discovery of the fraud and within three years of each Plaintiffs' purchases of ADSs giving rise to the cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a.      Determining that this action is a proper class action, designating Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Class Counsel;

b.      Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.      Awarding such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: April 23, 2019                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399

Email: lrosen@rosenlegal.com

Phillip Kim (admitted *pro hac vice*)
Joshua Baker (admitted *pro hac vice*)
101 Greenwood Ave., Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of April, 2018, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence M. Rosen